UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JOHNNY CHILDRESS, and wife JUSTINE          )
CHILDRESS,                                  )
                                            )
         *Plaintiffs*,                       )
                                            )   No. 1:05-CV-134
v.                                          )
                                            )   Magistrate Judge Carter
THE ESTATE OF WILLIAM EDGAR                 )
WORTHEY and LOOKOUT MOUNTAIN                )
FLIGHT PARK, INC.,                          )
                                            )
         *Defendants*.                       )

## MEMORANDUM

### I. Introduction

Defendants Lookout Mountain Flight Park, Inc. (the Flight Park) and the Estate of

William Edgar Worthey (the Estate) have each moved for summary judgement (Doc. 27 and Doc.

32, respectively) in this action brought by plaintiffs Justine and Johnny Childress. This action

arises from the accidental death of William Worthey (Worthey) who died after crashing his hang

glider into the plaintiffs' recreational vehicle (RV) parked on the plaintiffs' property. Justine

Childress, who heard the accident and saw the attempts to revive Worthey, has brought a claim of

negligent infliction of emotional distress against the defendants. Johnny Childress, Justine's

husband, has brought a derivative claim for loss of consortium against the defendants. The Court

has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity

jurisdiction, and the controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

The pivotal issue raised by these motions is whether the Flight Park and Mr. Worthey breached a

duty owed to Mrs. Childress which caused  Worthey's accident thereby causing her emotional

1

harm.  For the reasons stated herein, the Flight Park's motion for summary judgment and the

Estate's motion for summary judgment shall be GRANTED.

## II.  Standard of Review

Under Fed. R. Civ. P. 56(c), the Court will render summary judgment if there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  The burden is on the moving party to conclusively show no genuine issue of material fact

exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S.

806 (1995); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing

Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all

inferences drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44

F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc*., 43 F.3d 244,

250 (6th Cir. 1994).  The Court cannot weigh the evidence or determine the truth of any matter in

dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party presents evidence sufficient to support a motion under Rule 56,

the nonmoving party is not entitled to a trial merely on the basis of allegations.  The nonmoving

party may not rest on its pleadings, but must come forward with some significant probative

evidence to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing

Dairy*, 39 F.3d at 1347; *Horsemen's Benev*., 20 F.3d at 1411; see also *Guarino v. Brookfield

Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the

responsibility to search the record *sua sponte* for genuine issues of material fact).  If the

nonmoving party fails to make a sufficient showing on an essential element of its case with

2

respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 249; *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter summary judgment. *Id.; Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev*., 20 F.3d at 1411.

## III.  Relevant Facts

Considering the evidence in the light most favorable to the plaintiffs, the relevant facts are these:

The Flight Park is one of the premier hang gliding parks in the United States and has been in business for over 25 years. It is located near Trenton, Georgia and includes a launching area from Lookout Mountain and a 44 acre landing area at the foot of the mountain. It also provides an aero towing service that assists hang glider pilots in launching their hang gliders by towing them into the air before releasing them to continue their flights. The Flight Park trains and rates more novice rated hang gliders every year than any other hang gliding school in the United

States.  The Flight Park together with the area leading from Marion County Airport to Sequatchie Valley comprises one of the most popular hang gliding locations in the country.  Dunlap, Tennessee is commonly known as the "Hang Gliding Capital of the East," and thousands of safe cross-country flights have occurred in this region over the last twenty years.

Terry Presley is a Master Pilot hang glider with special skills in Aero Tow launch, Assisted Windy Cliff Launch, Cliff Launch, Flat Slope Launch, Restricted Landing Field, Turbulence and Cross Country.  He has flown cross country hang gliders since 1985 and has competed throughout the world.  (Presley aff. ¶¶ 2-3).  A hang glider pilot who is flying cross country flies as far as he is able using rising currents of air called thermals or rising air forced upward by mountainous terrain called ridge lifts.   (Presley aff. ¶ 9).  In cross country flights, pilots seek out this rising air to gain altitude in order to extend the flight and reach various target locations. (Presley aff. ¶ 9).  There are many designated landing fields in the Sequatchie Valley. (Presley ¶ 10).  Weather conditions can change rapidly, however, and a pilot can be in a strong lift one second and in strong sinking air another second. *Id.* at ¶ 11. When this happens, a pilot will be unable to make his intended landing field and will have to make a forced landing in an unknown field. *Id.*  Cross country pilots are trained to keep a forced landing field within reach at all times. *Id.*  Cross-country pilots are trained to recognize, approach, and land in unfamiliar places. *Id.*  Driveways often divide forced landing fields and usually pose no problem for landing. *Id.* at 16.  It would be standard practice to land the hang glider as close to the driveway as possible because the ground is flatter and more stable there than it is in the middle of the field thereby lowering the chance of injury. *Id.*  According to Terry Presley, "[d]riveways in rural

areas are used but a few times a day and the chances of meeting up with a car on a driveway are less than one in a million." *Id.*

Presley has made at least 100 cross country flights in the Sequatchie Valley since 1985 and he has never heard of a pilot being injured in an accident in the Sequatchie Valley. *Id.* at ¶ 12. He visited the location of Worthey's accident and the field was "plenty large enough" for a forced landing. *Id.* at ¶ 13.

Dean Funk has been flying hang gliders since 1996 and has been flying cross country in the Sequatchie Valley since 1999. He was a member of the 2005 United States World Team. He currently holds a Hang IV pilot proficiency rating by the United States Hang Gliding Association (USHGA); Hang V is the highest level. (Funk aff. ¶ 1-2). He met Worthey in a 2001 cross country flying competition in the Sequatchie Valley. Every participant, including Worthey, was informed of the designated landing areas up and down the Sequatchie Valley. *Id.* at ¶ 4. The ultimate goal in cross country hang gliding is to land your glider in a designated landing site far from the launch site. Sometimes, however, conditions occur which require the pilot to make a forced landing in another location. Cross country pilots are to keep at least one forced landing field within reach at all times. *Id.* at ¶¶ 4-5. Hang gliders do not have motors to power their gliders to intended designated landing fields. *Id.* at ¶ 5.

The Flight Park sponsors cross-country competitions from time to time which includes some prize money. The Flight Park requires that a person be approved by the USHGA, *i.e.*, to have a "sign-off," for cross-country flying, turbulence and for restricted landing before using the Flight Park to fly cross country, though the Flight Park's tow pilots are not instructed to check if a customer has the required cross country approval before towing them up for a cross country

5

flight. Each glider pilot who comes to the Flight Park must have a "skills card" with the appropriate "sign-offs" or approvals on them. The Flight Park allows glider pilots to launch only from those places and in those conditions for which the pilot is rated. For example, a glider pilot rated as a "Hang II" can launch only from a site rated Hang II and only in conditions rated Hang II. The Flight Park does not instruct experienced glider pilots where to land. It does instruct new glider pilots where to land. The Flight Park does not provide written warnings to the glider pilots about dangers posed to persons on the ground from hang gliders. The Flight Park places no restrictions on where cross-country fliers are to land.

Matthew Taber was and is the owner and business manager for the Flight Park at all times relevant to this lawsuit. (Taber dep. at 4). He has been hang gliding since 1977. He is a USHGA master rated pilot, advanced instructor, tandem instructor, tow pilot, and holds all of the available special hang gliding skills. (Taber aff. ¶ 2.) The USHGA's regulations for a restricted landing airfield is 300 feet by 300 feet. (Taber dep. at 93.) A pilot should choose a landing space free from obstructions such as trees, power lines, poles, fences, and roads. *Id.* at 91-93.

On March 27, 2004, the Childresses lived at 7955 Griffith Highway in Whitwell, Tennessee. (Johnny Childress aff. ¶¶ 2-3). They owned approximately seven and a half acres at this address (the property), and they lived in a log home of approximately 3,800 square feet on this property. *Id.* at ¶ 3. The home was located on the western end of the property. Griffith Highway constituted the western border of the property. *Id.* at ¶ 4. A gravel driveway ran from Griffith Highway to the house along the southern edge of the property. *Id.* To the south of the driveway several trees grew alongside the driveway. *Id.* The property included two fields in front of the Childresses' house. *Id.* The larger field was closer to the log cabin and did not border

6

Griffith Highway. *Id.* This larger field's width is approximately 287 feet from the northern boundary to the utility lines that ran beside the driveway (to the north of the driveway). *Id.* The northern border of this field was marked by a fence with trees and bushes growing in it. *Id.* The length of this field, between the two utility poles, is approximately 376 feet. *Id.* On the south side of the driveway in this field, along the property's southern border, grew several trees. *Id.* The eastern border of this field includes a line of trees for approximately 249 feet until it meets the fence of a separate property. *Id.* Mr. Worthey did not land his hang glider into this larger field. *Id.* The smaller field on the property was located beside Griffith Highway and is rectangular. *Id.* at ¶ 5. The length of this field, from the edge of the driveway on the south to the fence on the north is approximately 249 feet. *Id.* The length of this field is bisected by utility lines which run approximately 95 feet from the edge of our driveway. *Id.* The western edge of this field contains a line of trees, a utility pole, and a small pump house. *Id.* The eastern edge of this property is Griffith Highway which also has some trees growing alongside it in the northern half of the field. *Id.* On March 27, 2004, a 32 foot long recreational vehicle ("RV") was parked facing Griffith Highway with its rear bumper very near the small pump house. *Id.* This was the RV into which Mr. Worthey crashed his hang glider. *Id.*

Directly across Griffith Highway from the driveway is a field of more than 20 acres. *Id.* at ¶ 6. This field is relatively flat and has no major obstructions. *Id.* Across the fence that formed the northern border of the property, lies another field of more than 20 acres with no major obstructions. *Id.* Approximately .5 miles south of the Childresses' property was another property that bordered Griffith Highway. *Id.* This property is free from obstruction for approximately .25 miles, all alongside Griffith Highway. *Id.* Dozens of similar fields that were

larger and less obstructed than the area in front of the Childresses' house were available all along Griffith Highway. *Id.* These properties did not have driveways running through them, trees growing in them, or houses on them. *Id.*

The decedent, William Edgar Worthey, was an experienced hang glider pilot. At the time of his death on March 27, 2004, Mr. Worthey was rated as an advanced level solo hang glider and certified as a basic instructor in hang gliding by the USHGA. (Thoreson aff. ¶ 8). In addition, Mr. Worthey had attained a number of special skill certifications. These certifications included: 1) Aerotow (the ability to launch and tow successfully and safely behind a flying tow vehicle); 2) Cliff Launch (demonstrated ability to launch safely from a shallow slope ramp or cliff top, where running room is severely restricted, drop off is precipitous, and wind is 5 mph or less); 3) Turbulence (demonstrating controlled and un-panicked flight in conditions requiring quick, deliberate, substantial, and correct control application); 4) Restricted Landing Field (ability to land using a down wind leg, base-leg and final leg approach within a 300' by 300' square area); 5) Assisted Windy Cliff or Ramp Launch (ability to launch with wire assist in windy conditions from precipitous cliff or ramp with strong lift at take off - must show proper use of release signals and confident, aggressive launch); and 6) Cross Country (must have certain skills including demonstrated ability to recognize a safe landing area from the air and determine a safe approach and landing, accounting for wind direction, rotors, obstacles, power lines, ground slope, vegetation, etc.). *Id.* at ¶ 9.

Since the late 1990's, Mr. Worthey had been a frequent customer of the Flight Park. (Taber aff. ¶ 9). He obtained his beginner and novice ratings through the training programs offered by the Flight Park. (Thoreson aff. ¶ 6). Mr. Worthey was also a participant in various

8

hang gliding competitions including the "Team Challenge" competition, which is a cross-country contest hosted by Tree Toppers of Tennessee, based in Dunlap, Tennessee. (Taber aff. ¶ 9).

On March 27, 2004, three friends, Alicia Derin, Mario Andreou, and the decedent used the services at the Flight Park to make multiple hang gliding flights each. At least one of Worthey's flights ended in a landing zone provided by the Flight Park. Worthey decided to make his final flight of the day a cross country flight. Worthey used the Flight Park's aero tow services to tow his glider into the air and release him. He then began his cross country journey toward the Sequatchie Valley. Worthey contacted Derin several times during the flight via two way radio. Worthey indicated his flight was going extremely well, he had crossed Nickajack Lake, and he had found several good thermals. Worthey did not indicate he was having any difficulties.

On March 27, 2004, Mrs. Childress was driving up her driveway toward her house when she saw Worthey, in a hang glider fly very close over the hood of her vehicle. She drove a bit further when she heard a loud bang. She looked in the rear view mirror of her car and saw the glider flipping over on its back onto an old RV the Childresses had parked on their property. The glider rested on top of the RV upside down. Worthey was lying on top of the glider, his legs hanging off the motor-home. Mrs. Childress continued to drive forward a short distance toward her house until she stopped the car and hurried over to the RV. Her neighbors were already at the RV attempting to render assistance to Worthey. Mrs. Childress phoned her husband at work who said he would come home immediately. Mrs. Childress remained on the ground looking up at the RV while other people including emergency medical personnel continued to arrive and climb to the top of the RV to help Worthey. She could hear some of these people saying Worthey had no pulse and he was turning colors. A nurse administered CPR. Her husband arrive about ten

minutes after Mrs. Childress called him. Mrs. Childress watched her husband help carry Worthey's body down from the RV and place it in an ambulance where he was taken to the local hospital. Mr. and Mrs. Childress drove to the hospital to learn of Worthey's fate. Mrs. Childress waited in the car while Mr. Childress went inside and learned Worthey had not survived the accident.

Mrs. Childress asserts she has suffered severe emotional distress as a result of observing Worthey's accident and the attempts to save his life immediately after the accident. Psychiatrist Lee Solomon examined Mrs. Childress on July 6, 2004. In his affidavit, he opines that

> Mrs. Childress suffers from severe post traumatic stress disorder which includes considerable anxiety symptoms and also psychotic symptoms with a delusional belief that her house is being haunted and having auditory and visual hallucinations to support this. Mrs. Childress's condition severely disables her from leading a normal productive life, as she reports having done so prior to the onset of her condition. I am of the opinion that her disability is directly related to the accident that occurred in front of her house.

(Solomon aff. ¶ 4).

IV. Analysis

A. The Flight Park's Motion for Summary Judgment

*1. Choice of Law*

Where a court's jurisdiction is based on diversity, the court "must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.), *cert. denied*, 525 U.S. 810 (1998). Therefore, this Court will apply Tennessee's choice-of-law rules. Plaintiffs assert that under Tennessee's choice of law rules, Tennessee substantive law applies to their claims against the Estate. The Flight Park argues that under Tennessee's choice-of-law rules, the substantive law of Georgia applies. The Flight Park notes it is incorporated under Georgia law and located in Georgia and the only contact that the Flight Park had with this sad series of events occurred in

10

Georgia. However, as the plaintiffs emphasize, the accident occurred in Tennessee where the plaintiffs resided. Under Georgia law a plaintiff is permitted to recover for negligent infliction of emotional distress only if there is some accompanying physical impact to the plaintiff. *See Lee v. State Farm Mutual Ins. Co*., 533 S.E.2d 82, 84 (Ga. 2000); *Westview Cemetery, Inc., v. Blanchard*, 216 S.E.2d 776, 779 (Ga. 1975)*; Pike Nurseries, Inc. v. Allen,* 558 S.E.2d 834, 836 (Ga. Ct. App. 2002). In Tennessee, no physical impact is required. *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). Nevertheless, it is unnecessary to resolve the choice of law issue because under either Georgia or Tennessee substantive law, the Flight Park is entitled to summary judgment on the plaintiffs' claims.

   *2. Tennessee Law*

   To prevail on a claim for negligent infliction of emotional distress under Tennessee law, the plaintiff must prove that the defendant owed a duty to the plaintiff, that a breach of this duty occurred, and that this breach caused, in whole or in part, the plaintiff's injuries. *See Ramsey v. Beavers*, 931 S.W.2d 527, 531 (Tenn. 1996) ("The general negligence approach adopted for determination of cases involving emotional injuries requires that plaintiff establish each of the five elements of negligence– duty, breach of duty, injury or loss, causation in fact, and proximate causation.")

   The plaintiffs have not come forward with evidence that the Flight Park breached a duty to exercise reasonable care which was a cause in fact of Mrs. Childress' emotional distress. Plaintiffs assert that Flight Park breached its duty to exercise reasonable care in several ways: the Flight Park did not advise Worthey that hang gliders present a risk of injury to people on the ground, the Flight Services did not instruct Worthey to land in a designated landing area, and the

11

Flight Park did not require Worthey to file a specific flight plan.  As a result, plaintiffs argue, the

Flight Park is responsible, at least in part, for Worthey's accident which caused Mrs. Childress'

emotional injuries.  However, the uncontradicted evidence is that Worthey was an experienced

cross country hang glider with the appropriate designations from the USHGA.  He was familiar

with the area and familiar with the designated landing fields in that area.  Further, the Flight Park

presented additional, uncontradicted evidence that cross-country hang gliders are trained  to use

designated landing fields unless unexpected weather conditions require them to make a forced

landing elsewhere.  As previously mentioned, the evidence indicates Worthey received such

training.  There is further uncontradicted evidence that cross country hang glider pilots cannot

generally follow a specific flight plan as they are at the mercy of unpredictable air thermals.

There is no evidence that the warnings, instructions, and a flight plan plaintiffs complain are

lacking would have made any difference in the outcome of Worthey's fateful flight on March 27,

2004.  On the contrary, what evidence does exist concerning Worthey's landing tends to indicate

he was attempting to make an unplanned, forced landing when he crashed.  In sum, because no

evidence exists that the conduct or the lack of conduct by the Flight Park on March 27, 2004

contributed to Worthey's accident, then, under Tennessee law, the Flight Park is entitled to

summary judgment on Mrs. Childress' claim against the Flight Park .

As for Mr. Childress' claim for loss of consortium, this claim is derivative of Mrs.

Childress' claim, meaning it originates from Mrs. Childress' claim for emotional distress.  *See*

*Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 558 (Tenn. 2001); *McPeek v. Lockhart*, 174

S.W.3d 751, 756 (Tenn. Ct. App. 2005), *appeal denied*, (Oct. 3, 2005).  Under Tennessee law,

because the Flight Park has no liability to Mrs. Childress, the Flight Park is also entitled to

summary judgment on Mr. Childress' claim for loss of consortium. *See Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987) ("a husband's or wife's claim for loss of consortium will always be "derivative" in the sense that the injuries to his or her spouse are an element and must be proved"); *Hunt v. Fayette County Bd. of Educ.*, 1990 WL 62834, *4 (Tenn. Ct. App. May 16, 1990) (same).

*3. Georgia Law*

To prevail on a claim for negligence under Georgia law, a plaintiff must establish four elements: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *City of Douglasville v. Queen*, 514 S.E.2d 195, 197 (Ga. 1999); *Bradley Center, Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982). Further, Georgia law requires an additional element to maintain an action for negligent infliction of emotional distress. This additional requisite compelled under Georgia's "impact rule," requires a plaintiff to plead and prove, *inter alia*, a physical impact to his person. *Lee v. State Farm Mut. Ins. Co.,* 533 S.E.2d 82, 85 (Ga. 2000); *Ryckeley v. Callaway*, 412 S.E.2d 826, 828 (Ga. 1992).

As previously discussed in the section on Tennessee law above, the plaintiffs have failed to come forward with evidence that any acts or omissions on the part of the Flight Park contributed in any way to the decedent's accident. On this basis alone under Georgia law, the Flight Park is entitled to summary judgment on Mrs. Childress' claim against it. There is also another reason under Georgia law to grant summary judgment on this claim. Mrs. Childress

13

suffered no physical injury or impact as a result of Worthey's accident.  Consequently she is

unable to meet the physical impact rule requirement that Georgia law imposes, and the Flight

Park is entitled to summary judgment on Mrs. Childress' claim of negligent infliction of

emotional distress.

As in Tennessee, in Georgia "[l]oss of consortium is a derivative tort, and no liability can

attach where the defendant owes no tort liability to the spouse."  *Durley v. APAC, Inc.*, 236 F.3d

651, 658 (11th Cir. 2000) (citing *Hightower v. Landrum*, 136 S.E.2d 425, 528 (Ga.App. 1964)).

Accordingly, the Flight Park is also entitled to summary judgment under Georgia law for Mr.

Childress' loss of consortium claim against the Flight Park.

B.  The Estate's Motion for Summary Judgment

Mrs. Childress has sued the Estate for negligent infliction of emotional distress.  Mr.

Childress asserts a derivative claim of loss of consortium against the Estate.  The Estate asserts a

number of reasons why summary judgment should be granted on the plaintiffs' claims against it.

The Court shall focus on only two as they are dispositive of this motion: whether Mr. Worthey

owed a duty of care to Mrs. Childress and whether he breached that duty.

*1. Choice of Law*

Where a court's jurisdiction is based on diversity, the court "must apply the choice-of-law

rules of the forum state."  *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.), *cert. denied,* 525 U.S. 810

(1998).  Therefore, this Court will apply Tennessee's choice-of-law rules.   Plaintiffs assert that

under Tennessee's choice of law rules, Tennessee substantive law applies to their claims against

the Estate.  The Estate concedes in its reply brief, at least in a general sense,  that pursuant to

Tenn. Code Ann. § 42-1-105(b) Tennessee substantive law governs the plaintiffs' claims against the Estate. (*See* Estate's Reply at 2.) Tenn. Code Ann. § 42-1-105 is a choice of law statute which requires that Tennessee tort law be applied in determining the liability of a pilot that crashes in the state of Tennessee. Tenn. Code Ann. § 42-1-105 (b) provides:

> The owner and pilot, or either of them, of every aircraft which is operated over lands or waters of this state shall be liable for injuries or damage to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any objects therefrom in accordance with the rules of law applicable to torts in this state.

As will be discussed later, however, the Estate also argues that the question of whether Mr. Worthey actually owed a duty of care to the Childresses' must be determined by federal law. First, the Court shall review the basic elements of a claim for negligent infliction of emotional distress under substantive Tennessee law.

To prevail on a claim for negligent infliction of emotional distress under Tennessee tort law, the plaintiff must prove that the defendant owes a duty to the plaintiff, that a breach of this duty occurred, and that this breach caused, in whole or in part, the plaintiff's injuries. *Ramsey v. Beavers*, 931 S.W.2d 527, 531 (Tenn. 1996) ("The general negligence approach adopted for determination of cases involving emotional injuries requires that plaintiff establish each of the five elements of negligence– duty, breach of duty, injury or loss, causation in fact, and proximate causation"); *Lourcey v. Estate of Charles Scarlett*, 146 S.W.3d 48, 552 (Tenn. 2004) (same).

*2. Duty*

Whether Worthey owed a duty to the Childresses and whether that duty is imposed by Tennessee or federal law is a matter of some discussion by the parties in their briefs. The Estate initially argued in its brief in support of its motion for summary judgment that, under Tennessee common law, Mr. Worthey owed no duty to the Childresses. The plaintiffs, of course, disagree as to the Estate's interpretation of Tennessee common law and, in addition, argue that a number of Tennessee statutes which address an aircraft's conduct also impose a duty of care on Mr. Worthey. In its reply, the Estate asserts for the first time that any attempt by the State of Tennessee to establish a standard of care for aircraft, which includes hang gliders, within its borders is pre-empted by federal law. In support of this argument the Estate cites *Greene v. B.F. Goodrich Avionics Systems. Inc.* 409 F.3d 784, 794 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1465 (Mar. 6, 2006), wherein the Sixth Circuit held, in relevant part, that "federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation."

Generally, raising an issue for the first time in a reply brief is an insufficient effort to bring the issue before the court when reviewing a motion for summary judgment. *See United States v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) (mention of an issue in a footnote in the supporting brief of a motion for summary judgment and inclusion of the issue in a reply brief is insufficient to raise the issue for judicial review); *Sundberg v. Keller Ladder*, 189 F. Supp.2d 671, 682-83 (E.D. Mich. 2002) (refusing to consider an issue raised by a movant for summary judgment the first time in a reply brief, the court stated, "it is not the office of a reply brief to raise issues for the first time"); *Books A Million v. H & N Enterprises, Inc.*, 140 F. Supp.2d 846, 851 (S.D. Ohio 2001) ("it is improper for the Plaintiff to address three affirmative

defenses for the first time in its reply Memorandum.").  Nevertheless, it is clear to the Court that under either federal or Tennessee law, Worthey owed a duty of care to the plaintiffs.

14 C.F.R. § 103.9(a) provides that "[n]o person may operate an ultralight vehicle in a manner that creates a hazard to other persons or property."[1]  An ultralight is defined under federal aviation regulations, in relevant part, as an unpowered vehicle weighing less than 155 pounds, used for manned operation in the air by a single occupant, and used for recreation or sport purposes only.  14 C.F.R. § 103.1.

Under Tennessee law, whether the defendant owed a duty to the plaintiff must be determined by the trial court as a matter of law.  *West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 54 (Tenn. 2004). "[D]uty is the legal obligation owed by the defendant to the plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm."  *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *see also, West*, 172 S.W.3d at 551. "Stated succinctly, a duty of reasonable care exists if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property."  *McCall*, 913 S.W.2d at 153.

> Several factors must be considered in determining whether a risk is an unreasonable one. Those factors include the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

---

[1]Interestingly, while the Estate argued that federal regulations pre-empted any duty imposed by Tennessee law on Mr. Worthey, the Estate did not bring to the Court's attention 14 C.F.R. § 103.9(a) which establishes a duty of care on the part of hang glider pilots to persons on the ground.

*Id.* The Estate's experts both averred that because cross country fliers use unpredictable thermal currents to move them farther and farther from the launch site, they must keep forced landing fields within reach at all times. By definition, a forced landing field is an area which has not been prepared and designated as a landing field specifically for hang gliders. One expert also averred that cross-country pilots are instructed to use areas near driveways as landing sites during a forced landing because these areas are level thereby presenting a lesser risk of injury to the pilot than uneven ground. Given the nature of cross country flying, it is reasonably foreseeable that a hang glider will have to use a forced landing field, and it is also reasonably foreseeable that this forced landing field will have obstructions like vehicles, trees, homes, and utility lines located somewhere on the premises, especially if the pilot is aiming for the driveway. In the instant case, Mr. Worthey came down near a driveway with a house, trees, a camper, and utility lines nearby. The risk of injury by such conduct to people who live on this property and may be outside the house on their property is also reasonably foreseeable to the Court. Further, it is reasonably foreseeable to the Court that an individual could suffer severe emotional distress by observing a hang glider pilot crash his glider and die on the owner's property.[2] The magnitude of potential harm outweighs the importance or social value of flying a hang glider cross country. Landing in an area away from driveways and houses is a much safer alternative to the people on the ground with relatively little burden on the pilot, assuming that the wind conditions will allow

_____

[2]The Court uses the word "observing" in the sense used by the Tennessee Supreme Court in *Ramsey v. Beavers*, 931 S.W.2d 527, 531 n. 2 (Tenn. 1996) ("the term 'sensory observation' is used to allow, under circumstances in which all prerequisites are met, recovery by one who either does not or cannot visually observe the event, but observes the event by some other sense, such as audibly.")

such a landing. The Court concludes that under the common law of Tennessee, Mr. Worthey

owed a duty of care to Mrs. Childress to exercise reasonable care in choosing a place to land his

hang glider and in actually landing his hang glider.

Plaintiffs also argue that several Tennessee statutes pertaining to flight above Tennessee

lands and waters establish Mr. Worthey owed a duty of care to Mrs. Childress. Having found

that Mr. Worthey owed a duty of care under both Tennessee common law and federal law, the

Court finds it unnecessary to address this particular issue.[3]

---

[3]The statutes cited by plaintiff are the following:
Tenn. Code Ann. § 42-1-104:

> (a) Flight in aircraft over the lands and waters of this state is lawful unless at such
> a low altitude as to interfere with the existing use to which the land or water, or
> the space over the land or water, is put by the owner, or unless so conducted as to
> be imminently dangerous to persons or property lawfully on the land or water beneath.

> (b) The landing of an aircraft on the lands or waters of another person, without
> that person's consent, is unlawful, except in the case of a forced landing. For
> damages caused by a forced landing, however, the owner or lessee of the aircraft
> or the aeronaut shall be liable, as provided in § 42-1-105.

Tenn. Code Ann. § 42-1-105:

> (b) The owner and pilot, or either of them, of every aircraft which is operated over
> lands or waters of this state shall be liable for injuries or damage to persons or
> property on the land or water beneath, caused by the ascent, descent, or flight of
> the aircraft, or the dropping or falling of any objects therefrom in accordance with
> the rules of law applicable to torts in this state.

Tenn. Code Ann. § 42-1-202:

> (a) It is unlawful for any person to operate aircraft recklessly upon or over any
> area within the jurisdiction of this state.

> (b) For the purposes of this part, "recklessly" means either:

> (1) The operation of aircraft (other than helicopters) at a height above the ground
> level over which the aircraft is being operated less than five hundred feet (500');

19

*3. Breach*

The Estate asserts there is an absence of evidence to show that a failure on the part of

Worthey to exercise reasonable care caused, in whole or in part, Worthey's fatal accident.

Further, the Estate has come forward with evidence from two hang gliding experts which

suggests that Worthey was making a "forced" landing caused by unpredictable thermal air

currents at the time he crashed, inferring the accident was beyond his control.  The plaintiff bears

the burden of proof as to whether the defendant breached the standard of care.  *West*, 172 S.W.3d

at 552.  If the plaintiff's claim survives summary judgment, it is the province of the jury to

determine whether the defendant, in consideration of all the facts and circumstances, failed to

exercise due care.  *Id.*

"In a negligence action, the standard of conduct is always the same.  It is a standard of

reasonable care in light of the apparent risk."  *McCall*, 913 S.W.2d at 153.  "If defendant does not

exercise reasonable care, defendant has breached the duty."  *Id.* at 153-54.  "The term reasonable

care must be given meaning in relation to the circumstances."  *West*, 172 S.W.3d at 550.

The pivotal issue of Mrs. Childress' claim against the Estate is whether Worthey

exercised reasonable care in attempting to land his hang glider.  Instead of landing safely, Mr.

Worthey crashed his hang glider into a parked RV and died.  There is no evidence of nor have the

plaintiffs alleged Mr. Worthey intended this result.  Clearly something went wrong, but there is a

---

provided, that such operation of aircraft in time of emergency, when landing or
taking off from any landing area ... shall not be deemed to be reckless operation.

*            *            *

(3) The operation of any aircraft in such a manner as to unnecessarily endanger
the life of any person, either within or without the aircraft.

woeful dearth of evidence to explain what. Did Mr. Worthey misjudge the size of the landing area given his speed at the time of his approach? Was he attempting to land on or near the driveway when Mrs. Childress pulled in unexpectedly from Griffith Highway into her driveway causing Mr. Worthey to have to pull up suddenly to avoid her truck and overshoot his landing? Did a sudden gust of wind or other fickle weather conditions over which Mr. Worthey had no control cause his crash? There is simply no affirmative evidence as to what caused Mr. Worthey's crash, and, consequently, no affirmative evidence that Mr. Worthey breached the standard of care.

The accident by itself is not enough to establish a breach of the standard of care. *See Seavers v. Methodist Medical Center of Oak Ridge,* 9 S.W.3d 86, 91 (Tenn. 1999) ("The jury may not presume negligence from the fact of an injury alone.") However, under the doctrine of *res ipsa loquitur*, it is possible for a plaintiff to prove negligence where direct evidence of such is lacking. "[R]es ipsa loquitur is a form of circumstantial evidence that permits, but does not compel, a jury to infer negligence from the circumstances of an injury." *Seavers*, 9 S.W.3d at 91. The plaintiff must demonstrate that he was injured by an instrumentality within the defendant's control and that the injury would not have ordinarily occurred but for the defendant's negligence. *Id.* "The doctrine does not dispense with the plaintiff's burden of proof, but it merely allows an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." *Id.* The hang glider was in Mr. Worthey's control at the time of the accident.

The crux of this case lies in the second part of the *res ipsa loquitur* doctrine: whether the jury would have common knowledge or understanding that the events which resulted in

Worthey's crash do not ordinarily occur unless Worthey was negligent. Unlike driving a car, hang gliding is not an activity about which lay persons would have common knowledge or understanding. Expert testimony is necessary to determine whether Mr. Worthey's accident would not normally occur absent his negligence. While the Tennessee Supreme Court held in the *Seavers* case that expert testimony may be relied upon to use the doctrine of *res ipsa loquitur* in establishing negligence, *id*. at 95, there is no such expert testimony in this case. Consequently, the Court must conclude the plaintiff has failed to come forward with evidence to show a genuine issue of material fact exists concerning whether Worthey breached the duty of care he owed to Mrs. Childress. Accordingly, the Estate is entitled to judgment as a matter of law on Mrs. Childress' claim of negligent infliction of emotional distress. Congruously, because Mr. Childress' claim for loss of consortium is derivative of Mrs. Childress' claim, the Estate is entitled to judgment as a matter of law on his claim as well. *See Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987) ("a husband's or wife's claim for loss of consortium will always be "derivative" in the sense that the injuries to his or her spouse are an element and must be proved"); *Hunt v. Fayette County Bd. of Educ*., 1990 WL 62834, *4 (Tenn. Ct. App.1990) (same).

## V. Conclusion

For the reasons stated herein, the Flight Park's motion for summary judgment and the Estate's motion for summary judgment shall be GRANTED. A separate judgment shall be entered.

ENTER:

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

22